C. F. BRYANT v. A. C. BRYANT.

(Filed 17 September, 1919.)

1. **Evidence — Trusts—Parol—Letters—Hearsay—Appeal and Error—Prejudice—Reversible Error.**

Where the evidence is conflicting and close in a suit to engraft a parol trust in land conveyed to the defendant by deed absolute upon its face, and the plaintiff has introduced an unregistered deed to himself conveying an outstanding dower interest in the lands, claiming that the defendant had paid the purchase price in pursuance of the alleged parol agreement, which the defendant denied, the admission of a letter explanatory of the deed from the widow, introduced by the plaintiff himself, and not through her as a witness, tending to corroborate plaintiff's testimony that defendant paid the money for this deed, is hearsay, prejudicial, and reversible error, as it appears to have been used for the purpose of establishing the trust.

2. **Evidence—Letters—Hearsay.**

A letter from a third person written to the son of the plaintiff, tending to corroborate his evidence on a material fact involved in the action. may not be introduced in evidence, and the facts therein vested must be proved by the writer under oath as a witness, such being hearsay and *res inter alios acta.*

3. **Appeal and Error—Objections and Exceptions—Objectionable as a Whole.**

Where evidence, admitted on the trial of an action, is excepted to and the whole is objectionable as hearsay, the rule that the party is required to single out and except to such evidence only as is objectionable, where some thereof is competent, cannot apply.

ACTION tried before *Guion, J.*, and a jury at May Special Term, 1919, of BERTIE.

Plaintiff C. F. Bryant brought suit against his brother, A. C. Bryant, to establish a parol trust. He alleged that the administrator of the estate of his father filed a petition to sell the land in controversy to make assets; that a sale was ordered and the land was advertised for sale during the year 1887, and that the plaintiff, C. F. Bryant, and the defendant, A. C. Bryant, desiring to own said land together, agreed that A. C. Bryant should attend the public sale at the courthouse door in Windsor, N. C., and bid off and purchase said land for both C. F. Bryant and himself, pay for the same and take title in his own name, and hold the same in trust for both C. F. Bryant and himself; and that after payment by plaintiff to A. C. Bryant of his half of the purchase price that the latter would convey in fee simple to C. F. Bryant his share of the land. That A. C. Bryant attended the sale and purchased the land, in furtherance of this agreement, and took title therefor in trust for himself and C. F. Bryant by the deed to him, which is recorded, and now holds said title in trust as above set out.

Defendant denied that he purchased the land for the benefit of himself and his brother, or that his brother had any interest in the land; and pleaded further, that if the allegations of the complaint are true, the plaintiff had failed to diligently press his claim and that it was barred by laches and lapse of time. Defendant also contended that plaintiff had abandoned such equity as he may have had by consenting to a sale of the land by the defendant to Dr. Jenkins, who occupied it for five years and then reconveyed it to the defendant.

Defendant's motion for judgment of nonsuit was overruled at the close of plaintiff's evidence and again at the conclusion of all the evidence.

Defendant contended that the evidence is not sufficient to establish a parol trust, and further, that the uncontradicted evidence shows that the equity was abandoned, if any ever existed. Plaintiff testified that after he moved on the land in 1896 he consented to a sale of the part which he now claims, and that the defendant thereupon sold it to Dr. Jenkins. He further testified that Dr. Jenkins went into possession of the land and remained there five years. The defendant testified that Dr. Jenkins bought the land claimed by plaintiff for $300, and that after remaining in possession five years Dr. Jenkins gave it up. Dr. Jenkins corroborated this testimony. Defendant further contended that upon plaintiff's own evidence this action is barred by lapse of time. The sale was made in 1887; suit was brought thirty years later in 1917.

Plaintiff offered in evidence an unrecorded deed from Millie Futrell to plaintiff, dated 2 April, 1888, purporting to convey to plaintiff her dower interest in the land in controversy. Millie Futrell was the widow

of Samuel Bryant, original owner of the land. The case on appeal contains the statement that this deed was not recorded. Plaintiff testified on cross-examination, after the deed had been admitted in evidence, "I took this deed in 1888, and have never had it recorded." Defendant, in due time, objected to the introduction of this deed and assigned the admission of it as error. Plaintiff testified that after the purchase of the land at the courthouse door defendant furnished the money to buy the dower interest of Millie Futrell, widow of Samuel Bryant. Defendant denied this. Plaintiff was permitted to introduce a letter from Mrs. Futrell (which was written since suit was brought), in which she states that A. C. Bryant paid her for the land. Mrs. Futrell was not present at the trial. The letter was directed to the son of plaintiff, and defendant contends that it is simply an unsworn statement by a third party, who was not then present, and that it was harmful. The facts about the letter are as follows: It purported to be a letter from Mrs. Millie Futrell, widow of Samuel Bryant, deceased, to M. L. Bryant, son of C. F. Bryant. This letter was a reply to a letter written to her by Bryant, in which he inquires the reason why she conveyed her dower interest in these lands to A. C. Bryant. She replied, in answer to this question, that some twenty-five years ago she thought she had conveyed her dower right to A. C. Bryant, the defendant, and that about two years ago A. C. Bryant saw her and said that he had no deed for it and wanted a deed; and that in consideration of A. C. Bryant paying her the sum of $10 she then made A. C. Bryant a deed for the dower right. Further, that somebody back in 1888 had paid her $150 and that she thought it was A. C. Bryant, and for this reason she made him a deed for the consideration of $10.

Another exception is to the admission of the final account of the administrator of Samuel Bryant. The defendant had testified that, according to his recollection, the heirs of Samuel Bryant received in all about $20. To contradict him plaintiff introduced the final account showing that each heir received about $20.

The jury returned the following verdict:

1. Did the defendant A. C. Bryant, by agreement with C. F. Bryant made before the sale, purchase the Samuel Bryant land at the administrator's sale for himself and C. F. Bryant, as alleged in the complaint? Answer: "Yes."

2. Did the defendant, under such agreement and purchase, agree with plaintiff that the land described in the complaint should be allotted to the plaintiff and a deed made therefor when the balance of the debt on the whole tract was paid by the plaintiff? Answer: "No, according to first issue, plaintiff getting equal share with defendant."

3. How much of said debt now remains unpaid? Answer: "$225, and interest now due."

Judgment for the plaintiff, and defendant appealed.

*Winston & Matthews for plaintiff.*

*E. R. Tyler, Gillam & Davenport, Murray Allen* and *G. E. Midyette for defendant.*

WALKER, J., after stating the case: We need consider only one question, and that is the competency of the letter addressed by Mrs. Futrell to the plaintiff's son. This, in our opinion, was hearsay, and therefore should not have been admitted. It was also prejudicial. The letter was not competent because Mrs. Futrell was not sworn as a witness and was not even present at the trial. It was written to the plaintiff's son, a third party, and was, therefore, a transaction between persons who were not parties to the cause or interested therein, and who were not witnesses. Plaintiff says it was corroborative of him, as he had stated that he had received letters from her or that this letter had been so received. But the fact that a letter or letters had been received from her proved nothing, and therefore needed no corroboration. It is further contended that because it was at least corroborative the defendant should have placed his objection on that ground alone. But that rule applies when the objection is to the effect of the evidence, or when it may tend to prove two or more things, and is competent only as to one of them, but not where the evidence is wholly incompetent, as here, it being hearsay. The objection is that in that form it is competent for no purpose. It is saturated with hearsay, and was *res inter alios acta.* It should have been excluded.

But plaintiff contends that it was not prejudicial, as it proved nothing that could affect the defendant injuriously in the trial of the case. We can well see how, in one phase of the testimony, it may have been used with fatal effect against the defendant. The controversy was a close one, and it required little to turn the scales in favor of either side. This letter may have been the deciding factor. The plaintiff contended that it was competent, when it was introduced, because it tended to corroborate his version of the facts. If this be so, it was surely hurtful to the defendant. But we do not think that we could better demonstrate its harmfulness than by quoting from the plaintiff's own brief what is so forcefully said about the matter, which we now do: "The deed (referred to in the letter) is not offered as a link in a chain of title. It is offered to prove the contention of the plaintiff and in corroboration of it. The defendant denied the parol agreement, and denied that there was such a deed in furtherance of it. The introduction of the paper-

writing, not as title, but in corroboration, follows as a matter of course. It is a very strong circumstance in support of plaintiff. Defendant had denied the parol agreement *in toto.* He also denied that there was such a deed. The presentation of the deed put that matter at rest. The plaintiff does not claim that he owns the land under that deed; he might safely do so, but that was not his agreement. The deed is a strong circumstance tending to show that his contention is the true contention."

If this deed was a strong piece of evidence for the plaintiff, he tried to strengthen it by showing that while the deed recites that he paid the purchase money, it was really paid by the defendant, and as plaintiff had an equitable interest in the land and the parties were dealing with each other on that basis, the deed was made to him, and that there was no other reason why it should have been so made, if defendant owned the entire interest and had paid the purchase money. It is evident from the record that the letter explaining the transaction in regard to the deed had great weight in deciding the issue against the defendant. Besides, the plaintiff's contention was, as he so testified, that the dower of Mrs. Futrell was to be bought at the price of $150, and a deed therefor taken to him. That defendant had negotiated the trade and advanced the purchase money, which was to be a part of the price to be paid by them jointly for the land. In this view of the plaintiff's claim and testimony, it was incompetent to show any facts, by hearsay, which tended to support the plaintiff's theory. The court admitted the testimony for this purpose, and we must assume, under the circumstances, that it was permitted to be used in that way. It was, at least, given such a trend in the court below as to be calculated to affect the result unfavorably to the defendant, and therefore may have seriously prejudiced him. *Patton v. Porter,* 48 N. C., 539.

The deed, without the letter to help give it point and relevancy, would have been of little or no value. The two were so allied to each other that the object of introducing the deed, and its bearing upon the case, would not appear until the letter was considered. They could not well be severed or disassociated as pieces of evidence, because the one explained the other. We do not see how such evidence could have been otherwise than prejudicial. It may be that it was slight, and that the jury should attach little importance to it, but we cannot safely say, as contended by the plaintiff, that it was harmless. As said by *Pearson, C. J.,* in *McLenan v. Chisholm,* 64 N. C., 323, at p. 324: "There is no telling how far the defendant's case was affected by this error. Where there is error its *immateriality* must clearly appear on the face of the record in order to warrant this Court in treating it as surplusage." *Johnson v. R. R.,* 140 N. C., 581, at p. 587. The other exceptions need not be considered. If defendant wished to set up laches or the statute

of limitations, or any other matter in defense, he should so plead and tender the proper issues. We do not mean to say that laches or the statute will avail him, for that will depend upon the evidence.

We feel constrained by the ruling of the court in respect to the incompetent evidence to·grant another trial to the defendant.

New trial.